STERLING MATERIALS COMPANY, LTD. *vs.* THE BROOKS
BANK AND TRUST COMPANY, EXECUTOR
(ESTATE OF FRANK W. FULLER).

MALTBIE, C. J., HAINES, BANKS, AVERY and JENNINGS, Js.

Argued February 6th—decided March 5th, 1935.

*Harry Ossen,* for the appellant (plaintiff).

*James W. Roraback,* with whom, on the brief, was
*Charles P. Roraback,* for the appellee (defendant).

HAINES, J.  The trial court found, in substance, that
the plaintiff was a manufacturer of a roofing material
known as Asbestoline; that its traveling salesman,
Marks, called upon the decedent Fuller at the latter's
office and sought to sell him a quantity of Asbestoline;
that Fuller did not purchase any of the material, and
did not authorize anyone to do so for him; that Marks

thereupon obtained an order from Fuller's employee, Parsons, but that the latter had no authority to act as Fuller's agent in the matter; that the material was shipped to Fuller November 18th, 1926, who refused to accept it and it was thereafter sold by the railroad company for storage and other charges; that at various times from November 18th, 1926, until Fuller's death, July 5th, 1930, the plaintiff sought unsuccessfully to get Fuller to pay for the roofing, but the latter always denied he had purchased it or was in any way liable for it; that the defendant was appointed the executor of Fuller's estate; that Parsons died early in 1933 and that the present action was brought November 23d, 1933. The trial court reached the conclusion that neither Fuller nor any agent of his authorized to do so, had purchased the goods, and gave judgment for the defendant.

The requested findings and the evidence cited in support of them, justify us in adding to the finding that an order for the goods was signed by Parsons, as follows: "F. W. Fuller by E. A. Parsons." The remaining paragraphs of the draft-finding which we are asked to incorporate in the finding, so far as they are material to the issues before us and are not contained in the court's finding, are not supported by the evidence of record as admitted or undisputed. Practice Book, § 352.

The finding that Fuller did not purchase and did not authorize the purchase of the roofing, is attacked by the appellant as without evidence to support it. A careful reading of the record shows that the basis for this finding rests in part upon a certain telegram and other papers, and in part upon the testimony of witnesses as to statements made by the decedent regarding the transaction, which tended to contradict the

evidence of the plaintiff that the roofing was ordered by Parsons upon the specific authorization of Fuller.

Most of the testimony as to the statements of Fuller was admitted over the objection of the plaintiff, who now assigns the ruling as erroneous. It is quite clear that if this evidence was properly admitted, the court was faced with a flat contradiction in the evidence before it upon the question of authorization. The plaintiff's evidence was that Fuller, Parsons and Marks were in Fuller's office when Fuller said he would take the roofing, and told Parsons to sign the order, which was done. It appeared from the defendant's evidence that upon notice of shipment Fuller telegraphed the plaintiff denying that he had purchased the material, and that he thereafter refused to accept or pay for it. Fuller's bookkeeper was permitted to testify, without objection, that Fuller said in her hearing that "he didn't see why Mr. Parsons should have taken it upon himself to sign that paper," referring to the order. Fuller's "outside superintendent," Tyrell, testified that Fuller, among other things, said to him: "Did you hear how Parsons got himself into a fix? . . . This drummer, as you remember, who was in here to sell me some roofing material, goes down to the yard and has Parsons sign up for enough stuff to roof the City of Torrington. . . . I don't see why he ever signed that up." The plaintiff took exception to this latter testimony detailing the statements of Fuller, apparently on the ground of hearsay, though it was not succinctly so stated as required by the rule. Practice Book, § 158. The evidence was admissible under the statute as the declarations of the deceased person relevant to the matter in issue. General Statutes, § 5608. Reading all the evidence before us, we conclude there is support for the finding in question.

Two of the assignments of error to which the plain-

tiff attaches importance, relate to the finding that the plaintiff delayed action until after the death of both Fuller and Parsons, coupled with a statement in the memorandum of decision to the effect that this delay seemed to corroborate Fuller's version of the affair. If the finding were amended by adding the paragraphs of the draft-finding desired by the plaintiff, it would work no advantage to its case. It would then appear that the Court of Probate limited six months from July 10th, 1930, for the presentation of claims against Fuller's estate, and that the plaintiff's claim was presented September 30th, 1930, but the executor did not list the claim in the Court of Probate, nor was written notice of the disallowance of the claim given to the plaintiff. The order was signed November 16th, 1926. Fuller died July 5th, 1930, and Parsons died early in 1933. Action was open to the plaintiff during the three years and eight months preceding Fuller's death and also after the six months' limitation had expired, viz.: January 10th, 1931, being approximately two years before Parsons' death. The failure to take action during this combined period of five years and eight months was a circumstance which the trial court could properly take account of, and its weight was for that court to determine.

The conclusion that there was no contract of sale between the plaintiff and the decedent was one which we cannot say was unreasonable. No material question requiring discussion is raised by the other assignments.

There is no error.

In this opinion the other judges concurred.